UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELRY GRIGG,

       Plaintiff,                                            Hon. Ellen S. Carmody

v.                                                                Case No. 1:04 CV 416

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act. On September 20, 2004, the parties consented to proceed in this Court for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred the matter to this Court. (Dkt. #7).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter is remanded for the awarding of benefits**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The standard

affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years of age on the date of the ALJ's decision.  (Tr. 13).  He successfully completed high school and worked previously as a foundry worker, forklift operator, and lathe operator.  (Tr. 13, 75, 93).

Plaintiff applied for benefits on May 6, 2002, alleging that he had been disabled since September 30, 1996, due to hypertension, a ruptured disc, and a broken ankle.  (Tr. 54-56, 69).  Plaintiff's application was denied, after which time he requested a hearing before an ALJ.  (Tr. 20-51).  On December 4, 2003, Plaintiff appeared before ALJ Carlton Bailey, with testimony being offered by Plaintiff and vocational expert, David Holwerda.  (Tr. 192-239).

In a written decision dated February 18, 2004, the ALJ determined that Plaintiff was disabled as of October 1, 2002, but not prior thereto.  (Tr. 11-19).  The ALJ further determined, however, that because Plaintiff's insured status expired on December 31, 2001, he was nonetheless ineligible for disability benefits under Title II.  *Id.*  The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter.  (Tr. 3-5).  Plaintiff then initiated this appeal pursuant to 42 U.S.C. § 405(g).

Plaintiff's insured status expired on December 31, 2001.  (Tr. 13, 57-67); *see also*, 42 U.S.C. § 423(c)(1).  Plaintiff does not challenge this determination.  Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish

that he became disabled prior to December 31, 2001. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **MEDICAL HISTORY**

On September 11, 1992, Plaintiff was examined by Dr. Richard Dirrenberger. (Tr. 97-98). Plaintiff reported that he was experiencing "severe" pain in his lower back which radiated into his right lower extremity. (Tr. 97). Straight leg raising was positive and the results of a CT scan revealed a "very large inferiorly extruded L5-S1 disc on the right side." *Id.* The doctor recommended that Plaintiff undergo surgery to remove the "right L5-S1 disc," but Plaintiff instead opted for conservative treatment. (Tr. 95, 98).

On July 19, 1996, Plaintiff was examined by Dr. Dirrenberger. (Tr. 95-96). Plaintiff reported that he injured his back about four weeks ago "pulling a heavy object off of a shelf over his head." (Tr. 95). Plaintiff reported that his back pain radiated into his right lower extremity. *Id.* Range of spinal motion testing revealed "painful restriction of motion in all directions" and straight leg raising was positive. (Tr. 96). Suspecting that Plaintiff was suffering from "the same extruded disc at L5-S1 that was identified in 1992," the doctor instructed Plaintiff to participate in an MRI examination. *Id.*

On August 5, 1996, Plaintiff participated in an MRI examination, the results of which revealed a "slight loss of height and signal" of the L5-S1 disc space. (Tr. 99). This examination also revealed the presence of a "right paracentral herniated disc…which appears to compromise the right S1 nerve root." *Id.* After reviewing the results of this examination, Dr. Dirrenberger again recommended to Plaintiff that he undergo surgery to remove the right L5-S1 disc. (Tr. 94). Plaintiff

again declined surgery opting instead for conservative treatment. (Tr. 101). The doctor imposed on Plaintiff the following limitations: no lifting more than 15 pounds and no excessive bending or twisting. (Tr. 94).

On March 23, 1999, Plaintiff began treating with Physician's Assistant K.J. Hite. (Tr. 167). Plaintiff reported that he felt "real good" and did not report experiencing any back pain. *Id.* Between April 21, 1999 and May 4, 2000, Plaintiff consistently reported that he was "feeling well" without significant back pain. (Tr. 153, 155, 157, 159, 162, 165).

On June 8, 2000, Plaintiff reported that he hurt his back three days ago "when he slipped in the shower." (Tr. 152). Plaintiff reported that he was experiencing severe back pain, which radiated into his right lower extremity. *Id.* Treatment records reveal that Plaintiff again injured his back on October 17, 2001, after his nephew "jumped" on his back causing him to experience "severe" pain. (Tr. 122).

On May 7, 2002, Plaintiff reported that he recently injured his back after "jumping off back of truck." (Tr. 134). Plaintiff reported that he was experiencing back pain which radiated into his right lower extremity. He was diagnosed with low back pain with radiculopathy. *Id.* On June 13, 2002, Plaintiff reported that he was experiencing constant low back pain which radiated into his right lower extremity. (Tr. 132).

On July 27, 2002, Plaintiff participated in a consultive examination performed by Dr. Michael Simpson. (Tr. 101-05). Plaintiff reported that he was experiencing pain in his back, right hip, and right ankle. (Tr. 101). Plaintiff walked with a "mild limp on the right" and reported that he experiences "difficulty walking over uneven surfaces." (Tr. 101-02). He experienced "mild" difficulty squatting, but no difficulty heel/toe walking or getting on/off the examination table. (Tr.

102). Plaintiff exhibited limited lumbar flexion and "decreased sensation to pinprick throughout the entire right lower extremity." (Tr. 103). Dr. Simpson concluded that there existed no evidence of "atrophy, motor weakness, or reflex diminution to overtly suggest on going nerve root impingement." *Id.*

On August 29, 2002, Plaintiff reported that he was "sometimes" experiencing numbness in his right leg. (Tr. 128). On September 12, 2002, Plaintiff reported that he was experiencing back pain which rated 10 (on a scale of 1-10). (Tr. 126).

On October 7, 2002, Physician's Assistant Hite reported that Plaintiff "is unable to maintain a regular schedule of work hours due to the severity of the pain and also at times needing to lie down or get off his feet to help minimize the pain." (Tr. 122). Hite further reported that "[a]t this point it appears that surgery at some point in the not too distant future is going to be the treatment of choice, but for the time being [Plaintiff] is rendered disabled for employment." *Id.*

On December 11, 2002, Plaintiff reported that he experienced "constant" pain in his lower back which radiated into his right lower extremity. (Tr. 175-76). Plaintiff reported that at its best his pain rated an 8 (on a scale of 1-10) and at its worst rated a 10. (Tr. 175).

At the administrative hearing, Plaintiff testified that he was presently unable to perform work-related activities and had been so impaired since 1996. (Tr. 209-21).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations provide a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if an individual suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

In his decision denying Plaintiff's claim for benefits, the ALJ determined that Plaintiff suffers from degenerative disc disease, a severe impairment which fails to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17). The ALJ found that at no time relevant to the decision in this matter was Plaintiff able to perform his past relevant work. (Tr. 18). The ALJ further determined that while

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

Plaintiff was disabled as of October 1, 2002, as of the date his insured status expired, December 31, 2001, he retained the ability to perform work which existed in significant numbers in the economy. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 18-19).

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that prior to October 1, 2002, Plaintiff retained the capacity to perform sedentary[2] work. (Tr. 18). The ALJ further determined that as of October 1, 2002, Plaintiff's ability to perform work duties further

---

[2] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

diminished to the following extent: (1) he can lift/carry/push/pull 10 pounds occasionally and 5 pounds frequently, (2) he can sit for 6 hours during an 8-hour workday, (3) he can stand/walk for 2 hours during an 8-hour workday, (4) he cannot climb ropes, ladders, or scaffolds, (5) he cannot stoop, crouch, kneel, crawl, (6) he cannot work around heights or moving machinery, (7) he cannot perform commercial driving, (8) he can perform only limited reaching and occasional bending. *Id.*

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00.

Relying on Rule 201.21, the ALJ determined that prior to October 1, 2002, Plaintiff was not disabled because he could perform the full range of sedentary work. (Tr. 18). The ALJ further determined, however, that as of October 1, 2002, Plaintiff's additional functional limitations prevented him from "mak[ing] an adjustment to any work that exists in significant numbers in the national economy." The ALJ concluded that while Plaintiff was disabled as of October 1, 2002, he was not entitled to benefits because his insured status expired 9 months previous to this date.

In his decision, the ALJ recognized a clear (and dispositive) distinction between the impairment suffered by Plaintiff prior to October 1, 2002, and the impairment from which he suffered subsequent to that date. Specifically, the ALJ stated that "around October 1, 2002. . .[Plaintiff] was diagnosed with high grade spondylolisthesis and disc herniation at L4-5 (1996 was

9

L5-S1)." (Tr. 15). In other words, the ALJ found that the impairment from which Plaintiff allegedly suffered as of October 1, 2002 (herniation at L4-5), was a distinct impairment from that which he previously suffered (herniation at L5-S1). An examination of the medical record, however, fails to support this alleged distinction and instead reveals that Plaintiff suffered from the same (disabling) impairment throughout the relevant time period. The record further reveals that as of the date his insured status expired, Plaintiff was impaired to a greater extent than that recognized by the ALJ.

As the ALJ correctly recognized, prior to the expiration of his insured status Plaintiff suffered from a disc herniation at L5-S1. As the medical record detailed above reveals, in 1992 and 1996 Plaintiff suffered from a "very large" herniation at L5-S1 which compromised the S1 nerve root. While Plaintiff's condition appears to have subsequently stabilized, Plaintiff re-injured his back on June 8, 2000, eighteen months prior to the expiration of his insured status, and again on October 17, 2001, more than two months prior to the expiration of his insured status. (Tr. 122, 152).

Treatment records dispute the ALJ's contention that Plaintiff's subsequent injuries were somehow separate and distinct from those he suffered in 1992 and 1996. Treatment records from February and March 2003 reveal that Plaintiff was suffering from a "bulging disk" at L5-S1 with radiculopathy. (Tr. 115-16, 118-19). Furthermore, the October 7, 2002 letter authored by Physician's Assistant Hite, on which the ALJ placed "significant" weight,[3] reveals that Plaintiff has suffered from a disabling herniation at L5-S1 since 1992. (Tr. 122). Hite makes absolutely no reference to any injury which Plaintiff may have suffered at L4-5. *Id.* This is not to suggest that Plaintiff does not also suffer from an injury at L4-5, as there exists evidence suggesting otherwise.

---

[3] Specifically, the ALJ stated that he placed "significant weight" on Hite's opinion and "accept[ed] [his] statement of claimant's condition." (Tr. 15-16).

(Tr. 123). The relevant point is that contrary to the ALJ's conclusion, the impairment which renders Plaintiff disabled was not a distinct impairment first suffered following the expiration of his insured status, but was instead a further exacerbation of a long-standing severe injury. Moreover, the disabling exacerbation of this injury occurred well before the expiration of Plaintiff's insured status.

As noted above, the ALJ found that as of the date Plaintiff's insured status expired he retained the ability to perform the full range of sedentary work. The Court finds this conclusion to be supported by less than substantial evidence. Instead, the evidence supports the conclusion that as of October 17, 2001, Plaintiff was unable to perform the full range of sedentary work and was impaired to the extent later recognized by the ALJ: (1) he can lift/carry/push/pull 10 pounds occasionally and 5 pounds frequently, (2) he can sit for 6 hours during an 8-hour workday, (3) he can stand/walk for 2 hours during an 8-hour workday, (4) he cannot climb ropes, ladders, or scaffolds, (5) he cannot stoop, crouch, kneel, crawl, (6) he cannot work around heights or moving machinery, (7) he cannot perform commercial driving, (8) he can perform only limited reaching and occasional bending. As the ALJ properly concluded, this level of impairment precludes the performance of any work which exists in significant numbers.

The issue presented in this appeal is not whether Plaintiff is disabled, but rather whether he was disabled prior to the expiration of his insured status. The ALJ determined that Plaintiff, having suffered a separate and distinct injury to that suffered in 1992 and 1996, remained capable of working until well after the expiration of his insured status. As discussed above, the Court finds this determination lacks sufficient evidentiary support. Rather, the evidence reveals that Plaintiff was disabled, pursuant to the severe injuries he originally suffered in 1992 and 1996.

11

Specifically, the Court finds that Plaintiff was disabled as of October 17, 2001, after again re-injuring his previously existing back impairment.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. The Court further concludes that Plaintiff has established that he was disabled as of October 17, 2001. Accordingly, the Commissioner's decision is **reversed and this matter remanded for the granting of benefits**. A judgment consistent with this opinion will enter.

Date:  September 15, 2005           /s/ Ellen S. Carmody
                                    ELLEN S. CARMODY
                                    United States Magistrate Judge